1  RIMON, P.C.
2  Mark Lee (SBN 94103)
   mark.lee@rimonlaw.com
3  2029 Century Park East, Suite 400N
4  Los Angeles, California 90067
   Telephone/Facsimile: 310.561.5776
5
6  Attorneys for Petitioner and
   Opposing Party Brian Wilson
7

SPECTOR LAW GROUP, APLC
Samantha F. Spector (SBN 204482)
ss@spectorlawfirm.com
1901 Avenue of the Stars Suite 1020
Los Angeles, California 90067
Telephone:  424-313-7500
 Facsimile:  424.313.7505

8              **UNITED STATES DISTRICT COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10

11 | BRIAN WILSON,

12 |             Petitioner and Opposing
13 |             Party,

14 |

15 |    v.

16 | MARILYN WILSON-RUTHERFORD,
17 | AND DOES 1-25, inclusive,

18 |
19 |             Respondent and Moving
             Party.
20
21
22

Case No. 2:22-cv-01982 JLS (MAAx)

**PETITIONER BRIAN WILSON'S OPPOSITION TO MOTION FOR REMAND; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

(Filed concurrently with Declarations of Eric Custer and Mark S. Lee
in Support thereof)

Date:        September 2, 2022
Time:        10:30 a.m.
Crtrm:       8A

Action Filed on March 25, 2022

23
24
25
26
27
28

## MEMORANDUM OF POINT AND AUTHORITIES

## INTRODUCTION

Moving party Marilyn Wilson-Rutherford's ("Marilyn's") Request For Order for accounting and other relief ("RFO") seeks revenues from Brian Wilson's ("Brian's") sale of recently acquired copyright termination interests in musical compositions. Determining whether Marilyn can recover those revenues requires application of the Copyright Act. Her claim therefore arises under the Copyright Act,[1] this Court has exclusive jurisdiction over that claim, and Marilyn's motion for remand should be denied for the reasons described below.

## SUMMARY OF FACTS, PLEADINGS AND PROCEDURAL HISTORY

### A.  Brian's Creation of Beach Boys Musical Compositions, and Marriage to and Divorce from Marilyn.

Brian Wilson is a musician, composer, and since 1961 has been a founding member and principal songwriter of the musical group "The Beach Boys."  Brian married Marilyn in December 1964, and they divorced in 1981 on terms set forth in their 1981 Judgment of Dissolution of Marriage (and marital settlement agreement incorporated therein) ("1981 Judgment"). (Dkt. No.1-1, pp. 67-108; Declaration of Eric Custer ["Custer Decl."] ¶¶ 2-4.)

Brian wrote or co-wrote hundreds of music compositions before and during the term of their marriage. All of the musical compositions at issue herein were governed by the Copyright Act of 1909, and are sometimes called the "1909 Act Compositions" hereafter. (Dkt. No. 1, p. 3; Custer Decl. ¶¶ 3-5.)

As permitted by the 1909 Act in effect when he wrote or co-wrote them,

---

[1] Although Paragraph 2 of Attachment 8 emphasizes "reversion rights," Marilyn's request also makes belated claims to sound recording royalties and other rights that were designated Brian's separate property in 1981, and her motion states that she asserts seven other claims. (Docket. No. 1-1, p 6; Marilyn's Motion for Remand ["Mot."] p.12.) The presence of those other claims does not support Marilyn's motion as discussed infra.

PETITIONER AND OPPOSING PARTY BRIAN WILSON'S OPPOSITION TO MOTION FOR REMAND

Brian granted 100% of his copyrights, including all of his music publishing rights, in each of the 1909 Act Compositions he composed or co-composed for The Beach Boys through 1969 to Sea of Tunes, Inc. ("SOT") upon their creation. (Custer Decl. ¶ 3.) In return, SOT promised to pay Brian 50% of the revenues generated from the exercise of those musical composition rights as songwriter royalties, while SOT retained the other 50% of revenues as the copyright owner.  Through various assignments, those musical composition rights eventually came to be owned by Universal Music Publishing ("UMP"). (Custer Decl.¶¶ 3-4.)

When Brian's and Marilyn's marriage ended in 1981, Marilyn acquired a 50% community interest in the contractual revenues received from the music publishers pursuant to the 1981 Judgment. (Dkt. No. 1-1, pp. 67, 79-85.) Brian has provided to Marilyn a community share of those contractual revenues as required by the 1981 Judgment ever since. (Custer Decl.¶ 6.)

## B.   Congress' Creation of the Copyright Termination Rights at Issue.

U.S. copyright law has always contained provisions intended to provide authors like Brian with the opportunity to recover unremunerative transfers made at the beginning of the original copyright term decades after the copyright was granted, because the value of a copyright is "incapable of ... monetary evaluation prior to its exploitation."   3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 9.02 (LexisNexis 2016).

For more than 150 years, U.S. copyright law did that through "renewal" rights, which under the 1909 Act allowed an author to "renew" his original copyright for an additional 28 (and later, more) years after creation notwithstanding any previous grants by filing a "renewal" registration 28 years after the initial one. See 17 U.S.C. § 24 (1909). However, the Supreme Court undercut the effectiveness of renewal registrations to retrieve authors' rights in *Fred Fisher Music Co. v. M. Witmark & Sons*, 318 U.S. 643 (1943). *Fred Fisher* held that authors could be required to grant their inchoate renewal rights at the beginning of the original

2

1  copyright term, and that such a grant was effective if the author lived into the

2  renewal term. Id. at 658.

3       Congress in the Copyright Act of 1976 therefore created a new right, called a

4  "termination" right, by which authors or specified statutory heirs could "terminate"

5  improvident grants made in the original term decades after they were made.  For

6  1909 Act musical compositions, those new termination rights are codified in 17

7  U.S.C. §304(c) and (d).  The termination rights created by this statute were intended

8  to more effectively protect authors than "renewal rights" had done by, among other

9  things, preventing their alienation before they vested. Those provisions include a

10 number of statutory protections to insure that the rights it creates cannot be

11 prematurely assigned to anyone else by the original author or statutory heirs for this

12 reason.

13 **C.     Brian Acquires the Copyright Termination Interests Marilyn Seeks**

14 **         Beginning in 2011.**

15      Brian began to terminate his previous grants of music publishing copyrights

16 in the 1909 Act Compositions at issue as permitted by 7 U.S.C. §304(c), beginning

17 in 2011 and continuing through 2015, 46 years after they were granted to SOT in

18 1965 through 1969 as described above. Brian could not exercise those rights before

19 those times because: (A) he only had the right to serve those notices of termination

20 if he survived 46 years after copyright was originally secured in them pursuant to

21 §304(c)(3) and §304(c)(4)(A); (B) even after he could exercise those rights, they did

22 not vest in him until after he actually served notices of termination that complied

23 with the statute in 2011 through 2015 as provided in §304(c)(6)(D); and (C) after all

24 of that, the termination rights would not become effective for another decade, 56

25 years after their creation, beginning in 2021.

26      When Brian served those notices of termination beginning in 2011, the

27 eventual right to the United States copyright (and corresponding right to receive the

28 other 50% of the copyright-based music publishing royalties generated by those

PETITIONER AND OPPOSING PARTY BRIAN WILSON'S OPPOSITION TO MOTION FOR
REMAND

musical compositions that had previously been collected and retained by UMP)

vested in Brian pursuant to 17 U.S.C. §304(c)(6)(B).  Brian thus did not own those

termination interests until at least 30 years after the 1981 Judgment was entered.

   In December 2021, Brian sold those newly acquired copyright termination

interests, as well as the songwriter's royalties in which he and Marilyn had shared a

community interest, to UMP. Brian paid Marilyn her community interest in that

portion of the sale attributable to those songwriter's royalties declared community

property in the 1981 Judgment.  The result of Brian's grant to UMP was merely that

Marilyn did not share in the value of Brian's new termination interests, that began to

vest in him beginning in 2011. (Custer Decl. ¶ 6.)

   **D.    Marilyn's Files Her RFO.**

   On February 26, 2022, Marilyn served an RFO on Brian, using Judicial

Council of California Form FL-300. (Dkt. No. 1-1 pp.1-6). The Form says little

about Marilyn's substantive claims, but it refers to an Attachment 8, paragraph 2 of

which claims interests in "community property reversion rights" in "musical

compositions[.]" Id. In another document, namely page 11 of a memorandum of

points and authorities Marilyn filed with her form request, she cites 17 U.S.C.

§304(c) as the basis of the "reversion rights" in which she claims an interest. (See

Memorandum of Points and Authorities 11:16-20, Dkt. No. 1-1 p. 34.)[2] Piecing her

filings together, Marilyn effectively claims that she is entitled to share in the

proceeds from Brian's sale of federally created termination interests in musical

compositions he began to acquire in 2011 pursuant to paragraphs 6 and 7 of the

1981 Judgment.  (Dkt. No. 1-1 pp.1-6).

---

[2] Attachment 8 also makes other claims involving sound recordings and other rights. This Court has supplemental jurisdiction over those claims even if they do not implicate the Copyright Act, which is difficult to determine from the current vague RFO, because they part of the same "case or controversy" as Marilyn's claim to copyright termination interests as discussed infra.

### E.    Brian Removes Marilyn's RFO to This Court, and Marilyn Moves to Remand.

On March 25, 2022, Brian removed Marilyn's RFO claiming a share of the proceeds from the sale of his copyright termination interests attained pursuant to 17 U.S.C. § 304(c) to this Court, based on federal question jurisdiction.  28 U.S. Code §§ 1331, 1338, 1441, and 1454. (Dkt. No. 1.)

Shortly after removal, this Court issued its Standing Order on March 30, 2022. (Dkt. No. 12.) Paragraph 4 of the Court's Standing Order addresses removed actions, and provides that "[i]f a motion was pending in state court before the case was removed, it must be re-noticed for hearing in accordance with Local Rule 6-1." This Court's Order further provides that "[i]f…any…pleading in an action that is removed to this Court consists of only a form pleading in which boxes are checked, the party or parties utilizing the form pleading must file an appropriate pleading with the Court within thirty (30) days of the filing of the Notice of Removal" that complies "with the requirements of Federal Rules of Civil Procedure 7 through 11." (Dkt. No. 12, pp 2-4.)

Brian's counsel advised Marilyn's counsel of the Court's Standing Order on April 1, 2022, and discussed the provisions of that order quoted above on April 4, 2022. (Lee Decl. ¶¶ 3-4.)

Marilyn did not re-notice her form RFO as a motion that complies with Local Rule 6-1, nor refile it as a pleading that complies with Fed. R. Civ. Proc. 7 through 11. Instead, she filed the present motion.

## ARGUMENT

## I.    THIS COURT SHOULD DENY MARILYN'S MOTION BECAUSE SHE VIOLATED THIS COURT'S STANDING ORDER.

While it may comply with the California Rules of Court, Marilyn's form RFO does not comply with the Federal Rules of Civil Procedure or local rules of this Court. The relief Marilyn seeks obviously is some sort of civil action, but her use of

a state form and truncated briefing and evidence creates ambiguity as to her claims, the basis for her claims and the relief she seeks. Marilyn's motion trades on that ambiguity to argue, as she does, that her claim to Brian's copyright termination interests is not really an "action," not really a "pleading" or "motion," nor really about the copyright termination interests that are the first and apparently most significant claim described in paragraph 2 of Attachment 8 of her RFO, but instead a *sui generis* proceeding not subject to removal. (Cf. Dkt. No. 1-6, p. 6 and Mot. 12, 23.)

This Court's Standing Order includes the provisions cited above specifically to eliminate the ambiguity from which Marilyn seeks to benefit, and which can be injected into removed proceedings when state court forms that do not comply with federal rules are brought to this Court.  This Court's requirement that they be refiled in compliance with applicable federal rules is obviously intended to inject clarity into ambiguous state court forms, motions, pleadings and actions, so that disputes can be resolved on their merits.

Although aware of those provisions of this Court's Standing Order (Lee Decl. ¶¶3-4), Marilyn elected not to comply with the above provisions in this Court's Standing Order, instead arguing in her motion that the ambiguity she created and maintains requires remand on various grounds. (Mot. 12, 23.)

Marilyn should not benefit from the ambiguity she seeks to maintain. This Court should deny her present motion for remand because of her failure to comply with this Court's Standing Order. See *Strijnik St. v. Singpoli Group, LLC*, 2019 WL 1771661, *1 (C.D.Cal. 2019) (this Court dismissed plaintiff's complaint with prejudice for failure to comply with the Court's order to serve documents about mediation on defendant, because plaintiff's failure delayed the litigation, required unnecessary judicial involvement in the case, failed to advise the defendant of an alternative resolution procedure, and the plaintiff, though *pro se,* was an experienced attorney who understood the importance of obeying court orders).

## II. THIS COURT HAS EXLUSIVE JURISDICTION BECAUSE MARILYN'S CLAIM TO BRIAN'S COPYRIGHT TERMINATION INTERESTS ARISES UNDER THE COPYRIGHT ACT.

Marilyn's motion also should be denied on the merits, for the reason described below.

### A.    Marilyn's Claim To Brian's Copyright Termination Interests Requires Application Of The Copyright Termination Statute.

28 U.S. Code §1338 confers exclusive jurisdiction in this Court over "any claim for relief arising under any Act of Congress relating to . . . copyrights." 28 U.S.C. §1338(a).  To determine whether a claim "arises under" the Copyright Act, the Ninth Circuit follows the majority rule outlined in the seminal Second Circuit opinion of *T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir. 1964), cert. denied, 381 U.S. 915 (1965), which held that an action "arises under" copyright law if, inter alia, it "asserts a claim requiring construction of the [Copyright] Act." Id. at 828 (citations omitted). See *JustMed v. Byce*, 600 F.3d 1118, 1124-25 (9th Cir. 2010) (court applies *T.B. Harms* to hold there was removal jurisdiction because "the complaint asserts JustMed's ownership of the source code, while at the same time acknowledging that ownership is disputed[,]" thereby requiring application of the Copyright Act's "work made for hire" provisions); *Scholastic Entm't, Inc. v. Fox Entm't Grp., Inc.,* 336 F.3d 982, 986 (9th Cir. 2003) ("The Ninth Circuit follows the majority rule as outlined in *T.B. Harms Co. v. Eliscu...*to determine if copyright subject matter jurisdiction exists.")

Since *T.B. Harms*, federal courts in this and other circuits have repeatedly held that intellectual property ownership disputes that require construction of the Copyright Act "arise under" it for purposes of determining federal court jurisdiction – without regard to whether a pleading contains a claim for relief under the Copyright Act. See *JustMed v. Byce*, supra, 600 F.3d  at 1124-25 (allegations of ownership under the Copyright Act's work-for-hire doctrine arise under copyright

PETITIONER AND OPPOSING PARTY BRIAN WILSON'S OPPOSITION TO MOTION FOR REMAND

law even though only state law claims asserted); *Scandinavian Satellite Sys., AS v. Prime TV Ltd.*, 291 F.3d 839, 845-46 (D.C. Cir. 2002) ("[A] dispute that turns on whether a copyrighted work was created independently or as a 'work made for hire' is an ownership dispute that unquestionably arises under the Copyright Act… subject matter jurisdiction under § 1338(a) is not lost merely because a contract ownership dispute may be implicated"); *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996) (federal subject matter jurisdiction existed, at least in part, because copyright ownership dispute required construction of the Copyright Act); *Flo & Eddie, Inc. v. Bill Graham Archives LLC*, 2009 WL 10671057 (C.D. Cal August 25, 2009) (state law claims for unauthorized distribution of bootleg recordings properly removed because one claim required application of copyright law to determine rights.)

Here, Marilyn's claim to proceeds from Brian's 2021 sale of copyright termination interests can only be determined by applying 17 U.S.C. §304(c), the statute that creates and defines the scope of those interests. That statute contains a number of statutory protections describing who can own them and when and how they can be acquired, to insure that the rights it creates cannot be prematurely assigned to anyone before they vest. For example:

a. §304(c)(1) specifies that a copyright grant can be terminated only "by the author who executed it or, if such author is dead, by the person or persons" identified in §304(c)(2). These limitations mean that only a person who helped prepare or create a work, that is, an "author," as opposed to an "owner" of some interest in a work, can terminate a grant while the author is living.

b. Where an author is dead, §304(c)(2) provides that only a living widow, children, or in some cases grandchildren can exercise termination rights. If none are living, only the executor of the author's estate owns the rights pursuant to §304(c)(2)(D). The termination statute excludes ex-spouses from the class of persons

8

who can ever own or have standing to exercise termination rights.

c. 17 U.S.C. §304(c)(3) provides that termination rights only can come into existence "during a period of five years beginning at the end of fifty-six years from the date copyright was originally secured…" No one, including the author and the author's statutory heirs, can own or exercise termination rights before that time. After 56 years, only the person or persons authorized by the statute can exercise them as described above.  17 U.S.C. §304(c)(4)(A) provides that the notice of termination may be served two to ten years before the effective date of termination.

d. 17 U.S.C. §304(c)(4)(A) provides that a notice of termination may be served two to ten years before the effective date of termination. §304(c)(6)(B) provides that "[t]he future rights that will revert upon termination of the grant become vested on the date the notice of termination has been served[,]" but even then, §304(c)(6)(D) provides that "[a] further grant, or agreement to make a further grant of any right covered by the terminated grant is valid only if it is made after the effective date of the termination[,]" that is, at least two years after service of a notice of termination, although "[a]s an exception… an agreement for such a further grant may be made to …the original grantee or such grantee's successor in title, after the notice of termination has been served…" Id. Thus, no termination interest comes into existence and no such termination interests can be granted to an original grantee or successor until after they vest, and those termination interests cannot vest until the notice of termination is served, decades after the date copyright was originally secured pursuant to §304(c)(3) and §304(c)(4)(A).

e. To make clear that even authors or specified statutory heirs cannot

9

contract away inchoate future termination rights before they become effective (i.e., 56 years after copyright was originally secured), §304(c)(5) provides that "[t]ermination of the grant may be effected notwithstanding any agreement to the contrary, including an agreement to make a will or to make any future grant."

f.  17 U.S.C. § 304 preempts California state law to the extent California law purports to assign copyright interests to Marilyn contrary to that federal statute.  Copyright law does not generally preempt all copyright ownership created by California community property law, as 17 U.S.C. §201(d) generally allows for transfers "by operation of law," see *In re Marriage of Worth,* 195 Cal. App. 3d 768, 774 (1987), and Brian has always complied with and continues to comply with the 1981 Judgment concerning those interests in 1909 Act Compositions he owned or controlled in 1981. However, Brian did not own any copyright termination interests in the 1909 Act works at issue in 1981, and could not acquire any until he served notice of termination decades later. Further, while the copyright termination statute itself provides that it does not affect aspects of a person's copyright ownership "arising under any…State…laws" in 17 U.S.C. § 304(c)(6)(E), that same provision makes clear that only §304(c) governs "those rights covered by the grant that arise under this title[,]" that is, by the copyright termination interests it creates. Id. Thus, Marilyn cannot use state law to obtain an interest in federal termination rights Brian did not own contrary to the provisions creating those federal copyright interests, and copyright law's copyright termination provisions preempt state community property law to the extent  state law purports to grant copyright termination interests contrary to the

10

1    copyright termination statute's provisions.

2          Marilyn cannot recover as community property any of the termination

3    interests Brian created pursuant to 17 U.S.C. §304(c) beginning in 2011 in these

4    circumstances, because:

5          g.  Marilyn could never own termination rights in the 1909 Act

6              Compositions under 17 U.S.C. §304(c), because she is not in the

7              class of persons to whom the Copyright Act gives standing to own

8              or exercise such rights. She is not an "author" of the 1909 Act

9              Compositions under §304(c)(1), and she is not a "widow," "child,"

10             or "grandchild" of any of the 1909 Act Composition s' authors

11             under §304(c)(2).

12         h.  Termination rights that first vested when Brian exercised them

13             beginning in 2011 are not and could never be community property

14             of a marriage that ended in 1981. Brian did not and could not own

15             or control those rights in 1981 under §304(c)(2), and it was unclear

16             if he ever would be able to own or control those rights in 1981 as

17             described above. In contrast, it was clear under §304(c)(1) and (2)

18             that Marilyn would never be able to own those rights as described

19             above, because the marriage was ending and as an ex-wife, she was

20             not in the class of persons who could ever own or control

21             termination rights. Those rights did not vest in Brian until he

22             survived long enough to serve notices of termination and he actually

23             served notices of termination for grants involving those 1909 Act

24             Compositions in compliance with 17 U.S.C. §304(c) beginning in

25             2011 as described above, 30 to 35 years after the 1981 Judgment; [3]

26    _____

27    [3] Indeed, to the extent the copyright termination interests that vested in Brian

28    beginning in 2011are anyone's community property, they would be the community
      property of his wife in 2011 through 2015 and presently, not his ex-wife Marilyn.

PETITIONER AND OPPOSING PARTY BRIAN WILSON'S OPPOSITION TO MOTION FOR
REMAND

i.   Brian could not have contractually assigned any interest his contingent future copyright termination rights in those 1909 Act Compositions he authored or co-authored during his marriage to Marilyn by an agreement made in connection with the 1981 Judgment, because in 1981 he did not own or control those rights, and any attempt by him to do so would have been an unenforceable "agreement to the contrary" pursuant to 17 U.S.C. §304(c)(5); and

j.   17 U.S.C. §304 preempts California community property law to the extent that state law purports to assign interests in future contingent termination rights to an ex-spouse contrary to the provisions of 17 U.S.C. §304, because such an advance assignment of termination interests is prohibited by that federal statute.

This Court must apply 17 U.S.C. §304 to determine whether Marilyn has any rights in the copyright termination interests Brian acquired beginning in 2011 and assigned to UMP in December 2021 for these reasons, and Marilyn's RFO "arises under" the Copyright Act in these circumstances pursuant to under *T.B. Harms v. Eliscu*.  *JustMed v. Byce*, supra, 600 F.3d at 1124-25 (complaint alleging misappropriation of trade secrets and other state law claims properly removed under *T.B. Harms* because determining ownership of the property at issue required application of the Copyright Act's "work-for-hire" provisions); *Regents of University of California v. Aisen*, 143 F. Supp. 3d 1055 (S.D. Cal. 2015) (complaint that asserted only state law claims "arose under" the Copyright Act under *T.B. Harms* and *JustMed* because ownership of the computer data in dispute required application of the "work-for-hire" provisions of the Copyright Act.)

This Court has exclusive jurisdiction over Marilyn's claim to proceeds from the sale of Brian's copyright termination interests under this authority. The Supreme Court and the Ninth Circuit have consistently recognized that Congress intended claims arising under the Copyright Act to be adjudicated only in federal courts to

accomplish the "purpose of Congress to have national uniformity in . . . copyright laws." *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 231 n.7 (1964); *Community for Creative Non-Violence v. Reid*, 490 U.S.   U.S. 730, 740 (1989) ("federal statutes are generally intended to have uniform application[,]" and the Copyright Act in particular has an "express objective of creating national, uniform copyright law"); see also *JustMed v. Bice*, supra, 600 F. 3d at 1124 (Ninth Circuit relies on the Supreme Court's reasoning in *CCNV* that adjudicating copyright ownership disputes in federal courts was of paramount importance to federal jurisdiction to affirm removal even though no copyright claim was asserted); *Vestron, Inc. v. Home Box Office, Inc.*, 839 F.2d 1380, 1382 (9th Cir. 1988) ("[B]y virtue of our exclusive jurisdiction, only a federal court can administer" the Copyright Act.). Prohibiting adjudication of copyright matters in state courts "avoid[s] the practical difficulties of determining and enforcing an author's rights under the differing laws and in the separate courts of the various States." *In re Peregrine Entm't, Ltd.*, 116 B.R. 194, 199 (C.D. Cal. 1990) (quoting H.R.Rep. No. 1476, 94th Cong., 2d Sess. 129 (1976)).

California state courts agree that they lack jurisdiction to hear claims that arise under the Copyright Act.  See, e.g., *Lockwood v. Sheppard, Mullin, Richter & Hampton*, 173 Cal. App. 4th 675, 688 (2009) (vacating judgment after finding exclusive federal court jurisdiction pursuant to 28 U.S. Code § 1338(a) with direction to dismiss the matter for lack of subject matter jurisdiction); *Holiday Matinee, Inc. v. Rambus, Inc.*, 118 Cal. App. 4th 1413, 1428 (2004) (affirming trial court's demurrer and judgment after finding exclusive federal court jurisdiction pursuant to 28 U.S. Code §1338(a)).

As Marilyn's claim to copyright termination interests requires application of and therefore arises under the Copyright Act, this Court has exclusive jurisdiction over that claim, and her motion for remand must be denied.

### B.   Marilyn's Arguments to Dispute Federal Jurisdiction Lack Merit.

Marilyn's motion for remand does not address the basis for Brian's removal, but instead makes a series of unmeritorious arguments based on irrelevant authorities that should be rejected as described below.

First, Marilyn's motion avoids discussing the basis for removal described at length in Brian's Notice of Removal.  Marilyn does not attempt to distinguish, or even address, the Ninth Circuit's controlling *JustMed* decision cited above, nor the *Regents of University of California v. Aisen* decision cited above, even though both were cited as the basis for removal in Brian's Notice. (See Dkt. No.1, p. 3.)  Marilyn does not attempt to distinguish the Second Circuit's *T.B. Harm v. Eliscu* decision, even though the Ninth Circuit adopted it as the proper way to evaluate "arising under" removal jurisdiction, and even though *JustMed and Aisen* held that removal was proper pursuant to *T.B. Harms* based on that adoption. Marilyn*'s* motion does not address the reasoning of *JustMed* and *Aisen* that removal is proper here because state law claims that require application of the Copyright Act "arise under" it for removal purposes pursuant to 28 U.S.C. §1338(a).  Marilyn cannot meritoriously do so, because 17 U.S.C. §304(c) must be applied to determine whether she can recover based on the "reversion interests" she claims, as she effectively admits at page 11 of state court memorandum of points and authorities.[4] Marilyn's motion's failure to address the actual basis for Brian's removal to this Court demonstrates that, unable to prevail on the merits, she prefers to talk about something else.

Second, Marilyn's lengthy discussion about whether her claim is "equivalent" to or has "extra elements" not required in a copyright claim (Mot. 16-22) is

---

[4] Specifically, Marilyn argues that "the community must also own the reversion rights in those copyrights… 17 U.S.C. 304(c); *Burroughs v. MGM* (2d. Cir. 1982) 683 F. 2d. 610, 617 [17 U,S,C. 304(c),"under certain conditions, allows a living author…to terminate a copyright grant fifty-six years after the copyright was originally secured']." (Dkt. No. 1-1 p. 34)

PETITIONER AND OPPOSING PARTY BRIAN WILSON'S OPPOSITION TO MOTION FOR REMAND

irrelevant in these circumstances. "Equivalence" to a copyright claim does not matter when a claim actually arises under the Copyright Act; by definition, a claim that "arises under" the Copyright Act is more than "equivalent" to one that does. Without acknowledging it, Marilyn in effect argues about the first prong for removal jurisdiction articulated in *T.B. Harms v. Eliscu* by disputing whether her claim is "for a remedy expressly granted by the [Copyright] Act, e.g., a suit for infringement" as articulated in *T.B. Harms v. Eliscu,* 339 F. 2d at 828, quoted with approval in *Scholastic Entertainment, Inc. v. Fox Entertainment Group, Inc.*, 336 F. 3d at 986. Whether claims include "extra elements" that make them not "equivalent" to copyright infringement claims is relevant to that discussion.

However, here Brian removed Marilyn's claim because it is "a claim requiring construction of the [Copyright] Act[,]" the *second* prong for removal jurisdiction articulated in *T.B. Harms*, *JustMed* and *Scholastic,* as described above. Argument about "extra elements" is irrelevant to that basis for jurisdiction, because regardless of the other elements of her claim, Marilyn must apply the Copyright Act to prevail on it, and therefore her claim arises under it. Just as there was removal jurisdiction in *JustMed* and *Aisen* because the plaintiffs' state law claims required application of the Copyright Act's "work made for hire" provisions to determine their merit, here there is removal jurisdiction because Marilyn's claim to Brian's copyright termination interests requires application of the Copyright Act's termination provisions to determine its merit.

Third, Marilyn cannot plead around such jurisdiction by claiming "extra elements" while avoiding reference to necessary federal questions, as her RFO's ambiguity ineffectively tries to do.  "[U]nder the artful pleading rule 'a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint.'" *ARCO Envtl. Remediation, L.L.C. v. Dept. of Health & Envtl. Quality of the State of Mont.,* 213 F.3d 1108, 1114 (9th Cir.2000) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 22 (1983), as

PETITIONER AND OPPOSING PARTY BRIAN WILSON'S OPPOSITION TO MOTION FOR REMAND

quoted with approval in *JustMed v. Byce,* 600 F.3d at 1124.) Just as the claims asserted in *JustMed* and *Aisen* all contained "extra elements," such as the presence of trade secrets, fiduciary duties, or contractual relationships, but still "arose under" the Copyright Act, here Marilyn's alleged "extra elements" of a marital settlement agreement and judgment does not change the fact that her claim to Brian's copyright termination interests "arises under" the Copyright because the Court must apply the copyright termination provisions of the Copyright Act to determine whether she can recover based on them. Indeed, though Marilyn's RFO tries to obscure it, even she admits that the "reversion rights" in which she claims a community interest were created by the Copyright Act, as described in footnote 4 above. (Dkt. No. 1-1 p. 34)

Fourth, none of the cases Marilyn cites in her motion disputes the above. Many do not address removal at all, and only one addresses "arising under" removal jurisdiction under *T.B. Harms*, *JustMed*, or the other authorities that establish Brian's removal jurisdiction here. They thus are beside the point.

Fifth, the one decision discussing *T.B. Harms* that Marilyn cites, *Scholastic Entertainment, Inc. v. Fox Entertainment Group, Inc.* (Mot. 16), does not support Marilyn's position. To the contrary, *Scholastic* affirmed that the Ninth Circuit applies *T. B. Harms* to find removal jurisdiction over claims that require application of copyright law and therefore "arise under" it. *Scholastic*, 336 F. 3d at 986.  It merely determined that the Copyright Act did not need to be applied to evaluate the agreement before it. *Scholastic*, 336 F. ed at 988-89. Thus, as stated in *Scholastic*, "questions regarding the ownership of a copyright are governed by state law" when the Copyright Act need not be applied to determine ownership, 336 F. 3d at 983, but when, as here, the Copyright Act must be applied to determine ownership, a case "arises under" the Copyright Act and must be resolved in federal court regardless of the contract or other state law basis for the claim. *JustMed*, supra, 600 F.3d at 1124-25. The other decisions Marilyn cites to argue that the Copyright Act does not apply to contract claims are inapplicable for the same reason; they did not need to apply

the Copyright Act to adjudicate the  contract claims before them. See, e.g., *Chesler/Perlmutter Prods., Inc. v. Fireworks Entertainment, Inc.*, 177 F. Supp. 2d 1050, 57-58 (C.D.Cal. 2001) (contract claim requiring adjudication of only state law issues not properly removable). (Mot. 16.)

Sixth, Marilyn's argument that an action may not be removed based on a federal defense (Mot. 15) is irrelevant, because Brian has never argued that it may. Marilyn's claim to revenues from the "reversion interests" created by 17 U.S.C. §304(c) cannot be determined without applying the statute that creates them. Proving her entitlement pursuant to § 304(c) is a necessary element of her claim, not a defense. Marilyn's apparent argument otherwise asks the Court to simply assume what she must prove to recover those §304(c) termination interests, which is that §304(c), the statute creating and governing those interests, allows her to recover monies from their 2011-2015 creation and 2021 sale under state law.

Seventh, Marilyn's argument that this case should be remanded because some of her claims, whatever they are,[5] do not implicate the Copyright Act is dead wrong. If one claim is removable because it arises under the Copyright Act, the entire action is removable under applicable law. Because Marilyn asserts a claim that arises under the Copyright Act, that claim must be adjudicated in federal court, and the remaining claims must be removed with it as part of the "action" in which the federal claim arises pursuant to 28 U.S.C. §1441(a).  This Court has supplemental jurisdiction over those other claims because they are part of the same case or controversy. *Regents of the University of California v. Aisen,* supra, 143 F. Supp. at 1057 (denying motion for remand because "*some* of the state law claims for relief 'arise under' the federal Copyright Act")(emphasis added); *Flo & Eddie, Inc. v. Bill*

---

[5] Although paragraph 2 of Attachment to Marilyn's RFO identifies various copyright and interests, it is difficult to articulate exactly what Marilyn is or is not complaining about and claiming an interest in based on that terse listing. (Dkt. No. 1-1 p. 6.)

PETITIONER AND OPPOSING PARTY BRIAN WILSON'S OPPOSITION TO MOTION FOR REMAND

*Graham Archives LLC*, 2009 WL 10671057, *8 (C.D. Cal August 25, 2009) (denying motion for remand even though three of the four state law claims asserted did not arise under the Copyright Act, because one of the claims did and the others were part of the same case or controversy pursuant to 28 U.S.C. § 1367(a)).

Eighth, Marilyn's argument that the Copyright Act does not "completely preempt" state law (Mot. 16) raises another "strawman" argument that Brian has never made.  Brian's notice of removal  acknowledged that the Copyright Act does not "completely preempt" all aspects of California law, or even all aspects of California community property law. (Dkt. No. 1, pp. 7-8.)  For example, the Copyright Act is silent on many contract-related issues, such as the competency of individuals to enter into binding agreements, circumstances which warrant rescission of an agreement, or the admissibility of extrinsic evidence to interpret agreements.  State law generally governs those issues even if the contract at issue grants copyright interests.  *See, e.g.*, *T.B. Harms v. Eliscu, supra;* 1 *Nimmer On Copyright*, supra, § 1.01[B][3][a], at 1-65.

However, state law cannot validate restrictions or contractual arrangements that the Copyright Act prohibits, and it completely preempts them.  *See, e.g.*, *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 710-11 (1984) (Oklahoma law prohibiting the broadcasting of commercials for alcoholic beverages on television preempted by 17 U.S.C. § 111 and applicable federal regulations); *Orson, Inc. v. Miramax Film Corp.*, 189 F.3d 377 (3d Cir. 1999) (en banc) (Copyright Act preempted Pennsylvania statute prohibiting movie distributors from entering into exclusive first run license agreements for more than 32 days).

Preemption applies to the termination provisions of the Copyright Act as much as its other provisions.  The termination statutes do not completely preempt state contract law, see 17 U.S.C. § 304(c)(6)(E) and House Report on the Copyright Act of 1976, House Report No. 94-1476, pp. 128, 142 (1976) (parties to agreement involving a copyright grant can terminate it under state law as they could before).

PETITIONER AND OPPOSING PARTY BRIAN WILSON'S OPPOSITION TO MOTION FOR REMAND

However, parties cannot use state contract law to transfer, waive, or contractually extinguish federal termination rights contrary to the statute that creates them.  Such agreements, while otherwise enforceable under state law, are "agreements to the contrary" prohibited by the termination statute.  17 U.S.C. §§ 304(c)(5), (d)(1). Neither the Marital Settlement Agreement nor the 1981 Judgment that incorporates it could affect the copyright termination interests that did not begin to vest in Brian until 2011 even if they meant to do so (which, under their terms, they did not).[6] Any such attempt would be preempted by the Copyright Act.

## III.   MARILYN'S ARGUMENT THAT THE NOTICE OF REMOVAL IS PROCEDURALLY DEFECTIVE LACKS MERIT.

Marilyn's argument that Brian's notice of removal is "procedurally defective" for describing Marilyn's RFO as both an "action" and a "motion" in its removal papers, and for not attaching the entire four-decades-old divorce file with its notice of removal (Mot. 23), lacks merit for several reasons.

First, Brian's notice was not procedurally defective. While Marilyn may characterize her RFO as "neither a complaint or answer, nor merely a motion by another name," and describe it as "a unique creature of the family courts for which there is no precise analogue in the Federal Rules of Civil Procedure(,)" (Mot. 14 3-4, 8-9), such creative characterizations do not exempt her from removal, because removal is permitted for "any civil action brought in a State Court of which the district courts of the United States have original jurisdiction (,)" 28 U.S.C. §1441(a), and her RFO is, obviously, a form of civil action.

This Court has original jurisdiction over her claim here because it arises under

---

[6] The plain language of and course of conduct of the parties regarding the MSA and 1981 Judgment demonstrate that they did not purport to grant Marilyn any rights in the copyright termination interests that began to vest in Brian in 2011, or other interests Marilyn now appears to claim, but as those contractual issues are not related to the removal jurisdiction issue raised by this motion, Brian does not address them here.

the Copyright Act as described at length above,[7] and her RFO is therefore subject to removal on this basis. Brian timely filed a notice of removal within 30 days of being served with the RFO, attached and filed the RFO and all attachments and exhibits supporting it, and provided a "short and plain statement of the grounds for removal" in the notice, complying with his obligations under the removal statute. See *Gonzales v. City if Hialeah*, 744 Fed. Apx. 611 (11th Cir. 2018).  Even if Brian's description of Marilyn's RFO as an "action" and "motion" in the notice, and his failure to attach the remainder of the underlying divorce file, were somehow considered "procedural defect," any such defect would be *de minimis*, curable before and after the 30-day removal period, and would not necessitate remand of the action to state court. See *Countryman v. Farmers Insurance Exchange*, 639 F. 3d 1270 (10th Cir. 2001).

Second, the argument is nonsensical.  Brian and Marilyn's divorce proceeding ended with the 1981 Judgment, as her RFO admits. The only legal action pending between the parties, and the only action that arises under the Copyright Act, is Marilyn's RFO. There was no need to burden the Court with the totality of the decades-old, closed divorce file that has nothing to do with the claims Marilyn asserts. Her RFO effectively acknowledges this by attaching all documents Marilyn believed were necessary to assert and attempt to prove her claims, and the only document from the divorce file submitted was the 1981 Judgment that is already before the Court.

Third, Marilyn's argument that Brian sometimes referred to the RFO as a "motion" is another example of Marilyn trying to benefit from the ambiguity of the

---

[7] Indeed, another ex-wife who makes analogous claims to revenues from termination interests against another musician's widow acknowledged this Court's original federal jurisdiction by filing claims similar to Marilyn's in this Court in the first instance.  See *Cher v. Mary Bono*, Case No. 2:21-CV-08157 JAK (RAOx) (Complaint filed October 13, 2021).

RFO form she did not clarify following removal. Her attempt to make the procedural ambiguity she maintains a virtue should not be rewarded. Having asserted a claim that requires application of the Copyright Act, her RFO is removable, and the copyright question it raises must be decided by this Court.

## IV.   THIS COURT SHOULD NOT 'ABSTAIN' FROM EXERCISING ITS EXCLUSIVE JURISDICTION.

Marilyn's final argument that this court should "abstain" from exercising its exclusive federal jurisdiction over her copyright claim (Mot. 25-28) lacks merit for several reasons.

First, no federal court in the country has ever "abstained" from exercising its exclusive jurisdiction over a copyright claim, for good reason.  The Ninth Circuit has repeatedly stated that the abstention doctrine applies only to claims under the concurrent jurisdiction of the federal and state courts. *See Intel Corp. v. Advanced Micro Devices, Inc.,* 12 F.3d 908, 913 n. 7 (9th Cir.1993) ("the circuit courts, and the Ninth Circuit in particular, have uniformly held that a district court may not grant a stay in [cases involving claims subject to exclusive federal jurisdiction]"). That should be especially true for claims arising under the Copyright Act, because Congress intended such claims to be adjudicated only in federal courts to accomplish the "purpose of Congress to have national uniformity in . . . copyright laws" as described at length above. *Sears, Roebuck & Co. v. Stiffel Co*., 376 U.S. 225, 231 n.7 (1964); *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989); *JustMed v. Bice*, supra, 600 F. 3d at 1124; *Vestron, Inc. v. Home Box Office, Inc.*, 839 F.2d 1380, 1382 (9th Cir. 1988). "Abstaining" is anathema to those purposes.

Second, Marilyn's argument is not supported by the authorities she cites. *Ankenbrandt v. Richards*, 504 U.S. 689 (1992), addressed whether there was an exception to *diversity* jurisdiction under 28 U.S.C.  §1332. It ruled there was an exception limited to "cases involving the issuance of a divorce, alimony, or child

PETITIONER AND OPPOSING PARTY BRIAN WILSON'S OPPOSITION TO MOTION FOR REMAND

custody decree," 504 U.S. at 704, and ruled it did not apply to the abuse claims presented. Id. Brian does not allege diversity jurisdiction under 28 U.S.C. §1332, this case is not about "divorce, alimony, or [a] child custody decree," and there is therefore no "exception" to apply and no reason to apply one here.

*Burford v. Sun Oil Co*., 319 U.S. 315 (1943), also does not support abstention here. *Burford* abstention is limited to a narrow category of cases in which the state provides a centralized administrative and judicial review system to administer a complex regulatory program implementing a state policy. Id. More recent Supreme Court authority indicates that the Supreme Court would not apply *Burford* abstention if an action was preempted by a federal statute because of the importance of federal courts adjudicating federal law. *New Orleans Public Service, Inc. v. City of New Orleans*, 491 U.S. 350 (1989). Here, there is no complex state regulatory program involving copyright termination interests, but there is a federal statute preempting claims that "arise under" the Copyright Act like Marilyn's, and a federal policy to have copyright law determined exclusively in federal court, so there is no basis to abstain on this ground.

*Mindys Cosmetics, Inc., v. Dakar*, 2009 WL 10669480, *6-*7 (C.D. Cal. 7/14/2009), also does not apply here. In *Mindys,* the issue was whether a registered trademark obtained during the term of a marriage qualified as community property. Preemption was not an issue because federal law does not preempt state law in the trademark field. *Stanford Telecommunications Inc. v. U.S. Dist. Court For Northern Dist. of Cal.*, 1989 WL 418538 (9th Cir. 1989) ("Congress did not intend to limit adjudication of trademark actions under the Lanham Act to federal courts"); *Duggan's Funeral Service, Inc. v. Duggan's Serra Mortuary, Inc*., 80 Cal. App. 4th 151(2000) (state court has jurisdiction to cancel a federal trademark registration). *Mindys* also found that "[w]hether a spouse can obtain a community property interest in a trademark under California law…is not clear" because "it does not appear that any published decision has addressed the issue[,]" and it abstained

1  from deciding the issue under *Burford* for this reason. 2009 WL 10669480 at *6-*8.

2      Here, in contrast, the issue of whether California law allows spouses to obtain

3  a community property interest in existing copyright interests *is* "clear," as the

4  *Mindys* court recognized, citing *In re Marriage of Worth*, 195 Cal App. 3d 768

5  (1987).  2009 WL 10669480 at *6,*8.[8]  Further, here there is exclusive federal

6  jurisdiction over claims that arise under the Copyright Act as described above. The

7  *Mindys* court itself would not have abstained from exercising its exclusive

8  jurisdiction in those circumstances, and it would have been a mistake if it had under

9  the Ninth Circuit authorities described above, because such abstention would require

10 a state court to rule on a copyright claim over which it had no jurisdiction.  No

11 federal court has ever abstained from maintaining a claim that arises under the

12 Copyright Act, and this Court should not be the first to make that mistake.

**V.    CONCLUSION**

14      Marilyn's motion to remand her RFO should be denied for all the reasons

15 described above.

---

[8] That Marilyn cannot claim a community interest in copyright termination interests Brian first began to acquire in 2011 is also clear from 17 U.S.C. 304(c), but since Marilyn and the Court must apply copyright rather than community property law to adjudicate that issue, the claim arises under the Copyright Act rather than state community property law as described at length above, and this Court, rather than a state court, should decide those issues.

23

DATED:  May 13, 2022

Respectfully submitted,

RIMON, P.C.

By:     */s/ Mark S. Lee*
         Mark S. Lee (SBN: 94103)
         mark.lee@rimonlaw.com
         RIMON, P.C.
         2029 Century Park East, Suite 400N
         Los Angeles, CA   90067
         Telephone/Facsimile: 310.375.3811

         SPECTOR LAW GROUP, APLC
         Samantha F. Spector (SBN 204482)
         ss@spectorlawfirm.com
         1901 Avenue of the Stars Suite 1020
         Los Angeles, California 90067
         Telephone:  424-313-7500
         Facsimile:  424.313.7505

         Attorneys for Petitioner and Opposing
         Party BRIAN WILSON

PETITIONER AND OPPOSING PARTY BRIAN WILSON'S OPPOSITION TO MOTION FOR REMAND